FLETCHER *v.* HAVRE DE GRACE FIREWORKS CO., INC., ETC., ET AL.

[No. 153, September Term, 1961.]

*Decided February 26, 1962.*

*Motion for modification of opinion filed March 19, 1962, and after hearing thereon, opinion filed July 5, 1962, modifying mandate.*

*Motion for rehearing filed August 6, 1962, denied September 13, 1962.*

198

The cause was argued before BRUNE, C. J., HAMMOND, HORNEY, MARBURY and SYBERT, JJ., and reargued on motion for modification before the entire Court.

*Roger D. Redden* (on the original argument) and *George Edward Thomsen* (on both arguments), with whom were *Henry C. Engel, Jr.,* and *William K. Connor* on the brief, for appellant.

*Norman P. Ramsey* (on both arguments) and *David F. Albright* (on the original argument), with whom were *Harry Dyer* and *C. Stanley Blair* on the brief, for Annette J. Fabrizio, etc. et al. part of appellees.

Submitted on the brief by *J. Wilmer Cronin* for Mary Lang, other appellee.

HORNEY, J., delivered both opinions of the Court.

The primary question posed by this appeal is whether the declaration sounding in tort against a corporation and its officers and directors contained such statement of facts as was necessary to constitute a cause of action against the officers and directors as well as the corporation.

On February 9, 1960, the plaintiff, Minnie L. Fletcher, owned and occupied a parcel of residential property on Chapel Road in suburban Havre de Grace. At the same time the defendants, Annette J. Fabrizio and James A. Fabrizio, her husband, now deceased, owned a parcel of commercial property directly across the road from the property of the plaintiff. This property was occupied by the Havre de Grace Fireworks Company, Inc., and the several buildings located thereon were used by the corporation as a plant in which to manufacture and store fireworks and other explosives.

On the day in question, a series of explosions (and the fires resulting therefrom) on the premises occupied by the corporation completely destroyed the fireworks plant and killed or burned to death James A. Fabrizio, and the explosions (not the fires) injured the plaintiff and damaged her home and other properties kept therein. This tort action was brought by the plaintiff to recover compensation for her personal injuries and property damages. In addition to the corporation, Annette J. Fabrizio, as executrix of the estate of James A. Fabrizio, who was president and general manager of the corporation at the time of the explosions, and Annette J. Fabrizio, individually, and Mary Lang, who were officers and/or directors of the corporation at the time, were also named as parties defendant.

The four-count declaration sought relief on four different theories: (i) based on trespass *quare clausum fregit* for damages to the property of the plaintiff as the result of the explosions; (ii) for damages and injuries to the person and property of the plaintiff as the result of negligence; (iii) for damages and injuries to person and property as the result of extra-hazardous activities carried on at the fireworks plant; and (iv) for damages and injuries to person and property as the result of creating or maintaining a nuisance.

A demurrer was filed by the corporation to the trespass *q.c.f.* and extra-hazardous activities counts, but it was overruled and no appeal was taken from the ruling of the lower court by the corporate defendant. Demurrers were also interposed by the individual defendants to all four counts and these were sustained by the lower court on the basis that the allegations in regard to the conduct of the officers and/or directors were "too general to charge them with liability." But, these same demurrers were in effect overruled insofar as it was claimed that there was no action for a common law nuisance on the facts alleged in the fourth count and insofar as it was claimed that counts three and four were duplicitous in that each attempted to allege two distinct and separate causes of action, and no appeal was taken by the individual defendants to the rulings adverse to them. However, the plaintiff appealed from the judgment for costs entered by the court

with respect to the rulings adverse to her. Hence, we are concerned here only with the rulings adverse to the plaintiff.

On this appeal the plaintiff has limited the questions presented to whether the allegations [i] (in the trespass *q.c.f.* count) to the effect that the officers and directors *had and exercised complete direction and control over all phases of the fireworks manufactory,* and [ii] (in the other three counts) to the effect that the officers and directors, *knowing of or responsible for certain negligent acts and conditions, extra-hazardous activities and nuisances done, conducted or existing in a fireworks manufactory over which they had and exercised complete direction and control, had failed to exercise reasonable care and diligence to avoid or correct the same and directly permitted the same to continue,* were sufficient initial pleadings of the responsibility of such officers and directors for the trespass caused by the explosions and the damages caused by such negligent acts and conditions, extra-hazardous activities and nuisances.

While Maryland Rule 301 c [1] stipulates that a clear statement of the facts necessary to constitute a cause of action shall be sufficient without reference to mere form, a plaintiff is still required to state the subject matter of a claim in the declaration with such reasonable accuracy as will show what is at issue between the parties, so that, among other things, the defendant may be apprised of the nature of the complaint he is required to answer and defend. Fisher, *Essentials of Maryland Pleading,* p. 22. This the plaintiff has not done in this case.

In order to show that the officers and directors of the fireworks company are personally liable for the tort committed by the corporation, or, in other words, state a cause of action against the officer-director defendants that is not demurrable,

---

1. Section c of Rule 301 is substantially the first clause of § 3 and the whole of § 6 of Art. 75 of the Code of 1951, which, together with § 5, were repealed after Rule 301 was adopted. The code sections referred to, originally enacted as a part of Ch. 112 of the Acts of 1856, were designed to retain only the best features of common-law pleading. Amendments to the original act were made by Chs. 420, 346 and 551 of the Acts of 1870, 1872 and 1924, respectively.

we think section c requires the plaintiff to clearly state such facts as will charge the individual defendants with having either *specifically directed, or actively participated or co-operated in,* a particular act of commission or omission that wrongfully triggered the series of explosions. *Levi v. Schwartz,* 201 Md. 575, 95 A. 2d 322 (1953). See also *Lobato v. Pay Less Drug Stores,* 261 F. 2d 406 (C. A. 10 1958), where the Court, citing the *Levi* case, points out (at p. 409) that "[s]pecific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation." To the same effect, see also 3 Fletcher, *Corporations* (Perm. Ed.), § 1137; 13 Am. Jur., *Corporations,* § 1087; 6 M. L. E., *Corporations,* § 232. It is manifest, we think, that the allegation in the trespass *q.c.f.* count that the officer-director defendants had and exercised "complete direction and control over all phases of the conduct of the business of the defendant company," and the more comprehensive allegation of similar import in the negligence, extra-hazardous and nuisance counts, fall far short of alleging that the individual defendants had personally directed or actively participated or cooperated in the tort committed by the corporation. Cf. *Callahan v. Clemens,* 184 Md. 520, 41 A. 2d 473 (1945). We hold that the sustaining of the demurrers of the individual defendants—insofar as they were adverse to the plaintiff—was proper.

> *Judgment affirmed; appellant to pay the costs.*

HORNEY, J., delivered the opinion of the Court on modification.

After this case (*Fletcher v. Havre de Grace Fireworks Co.,* 229 Md. 196, 177 A. 2d 908) had been decided, but before the mandate was issued, the appellant, alleging that she had been apprised of facts that could enable her to state a cause of action against the individual defendants, petitioned

this Court to modify its opinion by striking out the affirmance of the judgment for costs and in lieu thereof remand the case under Maryland Rule 871 a to permit an amendment of the declaration and for further proceedings. The motion was heard by the entire Court.

The record shows that the case came to this Court under somewhat unusual circumstances. In the first place, after the demurrers as to the individual defendants had been sustained, the parties entered into a stipulation and the lower court ordered that its prior orders sustaining the demurrers in eleven other cases against the same individual defendants should be suspended and held to be of no effect pending a decision by this Court on appeal in this test case to determine whether the declaration stated a good cause of action. But it was further stipulated that the mandate issued in this case should apply to the other eleven cases as if an appeal had been taken in each of them. Apparently, however, no consideration was ever given to the amendability of the declaration in the lower court. Whether an amendment should be allowed is, of course, a matter within the sound discretion of the trial court. *Standard American Homes v. Pasadena Building Co.,* 218 Md. 619, 147 A. 2d 729 (1959). But as indicated the appellant did not seek permission to amend in the lower court, and the court made no order with respect to amendment in its order sustaining the demurrers. Moreover, at the argument in this Court on the demurrers, the appellant indicated that she was without knowledge at that time of any additional facts.

Secondly, after the appeal was entered and the case set down for argument on the demurrers, all of the parties consented to the entry of a judgment for costs by the lower court subject to the approval of this Court. And on the day of the argument we permitted the judgment so entered *nunc pro tunc* by the lower court to be made a part of the record.

In addition to being advised at the hearing of the motion to modify the mandate as to what additional facts had been ascertained, we were further informed that the other persons having claims arising out of the explosion at the fireworks plant have deliberately delayed filing suit until this Court had de-

cided whether the facts alleged constituted a good cause of action. Thus (assuming the appellant is now able to state a case against the individual defendants) it is apparent that if she is not permitted to amend, then she (and the other plaintiffs tied in with her) will be forever barred from asserting a claim for the injuries she (and they) sustained as a result of the explosion, while, on the other hand (again assuming the newly discovered facts are such as would enable the statement of a good cause of action), the other persons who have not yet sued could now sue and possibly recover damages for the injuries they sustained. This would seem to be unfair. Under the provisions of Rule 871 a (that if the "purposes of justice will be advanced by permitting further proceedings" through amendment of the pleadings or otherwise), this Court may remand without affirmance or reversal. See *Stoewer v. Porcelain, Etc., Mfg. Co.,* 199 Md. 146, 150, 85 A. 2d 911 (1952), where it was said that General Equity Rule 17 (from which the provisions of Rule 871 a were derived) "indicates that amendments should be freely allowed to serve the ends of justice."

The motion to modify is essentially a motion to amend, which, had the case not been appealed, could have been timely filed in the lower court. And, since the lower court did not consider whether amendment of the declaration should be allowed, we see no reason why the appellant, under the peculiar circumstances of this case, should not be afforded an opportunity to petition the lower court now for permission to amend the declaration so that the lower court, in the exercise of its discretion, may decide whether amendment should be allowed. Cf. *Glenn v. Clark,* 53 Md. 580 (1880), in which it was held that in a case where new facts have been discovered during the progress of the case and laches cannot be imputed to a party, it is within the sound discretion of the trial court to decide whether leave should be granted to amend the pleadings. See also *Landay v. Cohn,* 220 Md. 24, 150 A. 2d 739 (1959).

We think the mandate should be so modified as to provide

for a remand of the case, without affirmance or reversal, for further proceedings, and we shall so order.

> *Case remanded, without affirmance or reversal, for further proceedings; appellant to pay the costs.*

BRUNE, C. J., filed the following opinion, in which PRESCOTT and MARBURY, JJ., concurred, dissenting to the opinion on modification.

The decision of the majority changes the prior disposition of this case from an affirmance of a ruling unanimously held to have been correct (by the five members of this Court who participated in the original hearing) to a remand without affirmance or reversal to permit application to be made for leave to amend on the basis of newly discovered evidence.

Attempts to invoke Rule 871 a or the predecessor statute from which it was derived (Acts of 1832, Ch. 302, § 6) [1] on the basis of new evidence after a case has been decided by this Court are extremely rare, so far as disclosed by my research which has been more time-consuming than productive. I can hardly believe that the dearth of such cases is accidental. Rather, it seems to be a recognition for a hundred and thirty years that the former statute or the present Rule which supplanted it applied only to a case where facts calling for its invocation were apparent from the record before this Court. Cases are almost innumerable where such a situation has existed and this Court, either of its own motion or at the instance of a party, has remanded to permit amendments to bring in additional parties, to conform the allegations of the bill to the proof adduced, or for taking additional evidence to determine some question. None of these cases is in point here and I shall therefore not cite any of them, except to comment that *Landay v. Cohn,* 220 Md. 24, 150 A. 2d 739, cited by the majority, is a case in which the likelihood that the appellant could state a good cause of action was apparent from the original record before us. Several other cases cited by the majority

---

1. Last codified as § 42 of Art. 5 of the 1951 Code.

deal with the freedom with which amendments may be allowed in the trial courts. Neither those cases nor Rule 320 (applicable to the trial courts) seem relevant here.

The above statute was construed by this Court in 1857 and again in 1902 as requiring that the cause for invoking it appear by the record. *General Insurance Co. v. U. S. Insurance Co.,* 10 Md. 517, 528; *Smith v. Hooper,* on motion for remand, 95 Md. 32, at 36, 54 A. 95. It was stated in *General Insurance,* and this passage was quoted in *Smith:*

> "But *the record must indicate* that the ends of justice will be promoted by such further proceedings, in order to authorize this court to remand a cause." (Italics supplied.)

*Gittings v. Baltimore City,* on motion for reargument or in the alternative for remand, 95 Md. 427, 54 A. 253, may seem inconsistent with this rule, but I do not believe that it intended to depart from it, or that it necessarily does. There the complainant had failed to allege in this bill that a certain notice had not been given, and in consequence of the omission of that allegation a demurrer to his bill was sustained and the decree dismissing the bill was affirmed by this Court. On the motion the appellant claimed, as he had at the original oral argument, that the bill did aver the lack of notice; but this Court adhered to its previous view that the bill failed to do so. It nonetheless remanded the case to permit an amendment setting up the lack of notice. This case may have involved belated recognition by the complainant of the importance of a fact which he had failed to aver. It did not, in any view, involve newly discovered evidence. It is doubtful that the reason for remand was actually apparent from the record, but this point does not appear to have been considered in the brief opinion granting the motion. It would, however, be very strange if *Gittings,* without even mentioning the point, were intended to overrule the explicit opinion in *Smith v. Hooper, supra,* rendered only a few months before, especially when it is noted that all seven of the judges who participated in *Smith v. Hooper* also participated in *Gittings.* Among the seven were

McSherry, C. J., who wrote the opinion in Smith, and Pearce, J. who wrote the opinion in *Gittings*. (All eight of the then judges participated in *Gittings*.) It seems to me probable that one of the chief distinctions between the two cases which led to the opposite results was that in *Smith* the effort was so to amend the bill and to present evidence in support thereof as to result in an absolute contradiction of what had been agreed to be the facts upon which the case had been decided, whereas in *Gittings* the additional fact sought to be alleged was supplementary to, but perfectly consistent with, the original bill. The facts that *Smith* was tried on the merits (practically, it is true, on agreed facts) and that *Gittings* came up on demurrer may also have been considered as important in distinguishing the cases. Since *Gittings* did not even refer to *Smith,* it is difficult to say with assurance just why the cases resulted differently. With regard to consistency of new allegations and the manner in which the case came up, this case resembles *Gittings* rather than *Smith,* but to follow *Gittings* here would be to do what *Gittings* did not purport to do. That would be to overrule *Smith* and *General Insurance* on the need for facts to appear in the record to warrant remand under the statute from which Rule 871 a is derived. Here the majority cites neither *Smith* nor *General Insurance.*

Apart from the increased volume of work which this Court would presently find it virtually impossible to handle, there might be merit in permitting or requiring this Court, which has only appellate jurisdiction, to consider matters transpiring or evidence coming to light after the trial below. However, except as to matters which may render a case moot, or such matters as the substitution of parties, this Court does not consider allegedly newly discovered evidence or events occurring subsequent to the trial, including recantations of testimony given in a criminal case. Why Rule 871 a should be applicable in the present case and not in other cases of the types just mentioned is not clear to me, nor can I find any explanation for it in the majority opinion. I am concerned as to how this question is to be dealt with when it next arises, for I can see little difference in practical effect between the motion here

granted and a motion addressed to this Court seeking the remand of a case for a new trial on the basis of newly discovered evidence.

If the *record itself* showed that the substantial merits of the case will not be determined by an affirmance, reversal or modification of the judgment appealed from or that the purposes of justice will be advanced by a remand to permit an amendment, I should have no hesitancy in concurring in the result reached by the majority, even though I should be unable to concur in the opinion. I have been unable, however, to satisfy myself that the record shows that either condition to the application of Rule 871 a is met.

This case seems to me to be controlled by the construction of the statute (now Rule) stated in *General Insurance Co. v. U.S. Insurance Co.,* and in *Smith v. Hooper,* both cited above. This Court is committed to the doctrine that the construction placed upon a statute by this Court and acquiesced in by the Legislature is engrafted upon the statute as fully as if it were incorporated therein. *Sonnenburg v. Monumental Motor Tours, Inc.,* 198 Md. 227, 81 A. 2d 617; *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570; *Zeamer v. Reeves,* 225 Md. 526, 171 A. 2d 488. I see no reason why the same doctrine should not apply where this Court, in the exercise of its rule making power, adopts the language of a statute which it has already judicially construed.

I shall discuss the majority's views of what may be called the "class suit" aspect of the case rather briefly. So far as I can see, the factual circumstance that others who have not sued as did the plaintiff and the plaintiffs in eleven other cases who agreed to stake their cases on hers may be in a more favorable position than the plaintiffs in the twelve suits, does not create an unfairness calling for the application of Rule 871 a. If there is any unfairness, it was voluntarily self-inflicted. It does not go to the question which I should think relevant under the Rule—fairness as between the plaintiff (and those who have cast their lot with her) on the one hand and the appellees on the other. As between these persons, the existence or non-existence of other potential plaintiffs seems to

make no difference. Would the legal position of this plaintiff and of the other eleven be improved or worsened if there were no other potential plaintiffs, and if so, why? For example, if the potential plaintiffs had sat by awaiting developments for so long that the statute of limitations had run against them, would that affect the fairness or unfairness of remanding the present plaintiff's case?

Judge Prescott and Judge Marbury have authorized me to say that they join in the views above expressed.