**Robert CROSSON, Plaintiff,**

v.

**N. V. STOOMVAART MIJ "NEDERLAND," Defendant and Third-Party Plaintiff-Appellee,**

v.

**INTERNATIONAL TERMINAL OPERATING CO., Inc., Third-Party Defendant-Appellant.**

**No. 422, Docket 31372.**

United States Court of Appeals Second Circuit.

Argued March 10, 1969.

Decided April 16, 1969.

Sidney A. Schwartz, New York City (Alexander, Ash & Schwartz, New York City, on the brief), for third-party defendant-appellant.

William F. Larkin, New York City (Schaffner & Lawless, Brooklyn, N. Y., on the brief), for defendant and third-party plaintiff-appellee.

Before MOORE, KAUFMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

International Terminal Operating Co., Inc., stevedore and third-party defend-

ant, appeals from an order of Jacob Mishler, J., in the United States District Court for the Eastern District of New York, which awarded counsel fees and expenses of $1,750 to appellee N. V. Stoomvaart Mij "Nederland," shipowner and third-party plaintiff, in the action below. 266 F.Supp. 409. Appellant stevedore claims that the shipowner is not entitled to this sum. For reasons given below, we affirm Judge Mishler's order.

The issue arises out of the familiar seaman-shipowner-stevedore trilogy. Plaintiff in this case is a longshoreman, entitled under accepted doctrine to receive from the ship the same protection against unseaworthiness or negligence as a seaman. After plaintiff sued the shipowner, the latter impleaded the stevedore, claiming a right to indemnity because the stevedore had failed to perform its duties in a workmanlike manner. The case was vigorously litigated and both aspects of it went to the jury, although Judge Mishler followed the sensible course of withholding submission of the third-party claim to the jury until it had decided plaintiff's. Thus charged seriatim, the jury found for plaintiff against the shipowner in the sum of $12,500 and for the shipowner against the stevedore on the indemnity claim. Since there is no appeal from these determinations, we may assume that the stevedore did breach its obligations to the ship. We may also accept the reasonable value of the legal services and disbursements at issue to be $1,750 because the parties have so stipulated.

The issue before us, which was reserved for Judge Mishler, is whether the shipowner is entitled to recover this sum from appellant stevedore; there is no question about the stevedore's obligation to indemnify the shipowner against the $12,500 jury verdict. Appellant concedes that the shipowner's right to indemnity ordinarily includes counsel fees, but claims that this case is unique because the shipowner neither defended itself nor directly incurred the expense of defense. Under the shipowner's policy with Hartford Insurance Company, relevant portions of which are set forth in the margin,[1] the insurer was obligated to furnish those services. Since Hartford did do exactly that, the question is whether an item of the stevedore's normal liability was thus eliminated.

■ We put the question that way because it must be emphasized that we are dealing with federal law in the national sense. A shipowner's indemnity action against a stevedore is a creature of maritime law, judicially fashioned in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133 (1956), and carefully nurtured since. See, e. g., Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491 (1958). The federal courts have now made clear that in a proper case a

---

I. II. Defense, Settlement, Supplementary Payments.

With respect to such insurance as is afforded by this policy, the company shall:

    (a) Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

\*   \*   \*   \*   \*

    (b) (2) Pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest occurring after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon.

stevedore is liable to a shipowner for the latter's counsel fees in defending the main action brought against the ship. See, e. g., Guarracino v. Luckenbach S.S. Co., 333 F.2d 646 (2d Cir.), cert. denied, 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964); Paliaga v. Luckenbach S.S. Co., 301 F.2d 403, 409–410 (2d Cir. 1962). Liability has not been placed on the stevedore casually, but as a matter of policy, national in impact. Thus, in Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964), the Supreme Court stated:

> [W]e deal here with a suit for indemnification based upon a maritime contract, governed by federal law, * * in an area where rather special rules governing the obligations and liability of shipowners prevail, rules that are designed to minimize the hazards encountered by seamen, to compensate seamen for the accidents that inevitably occur, and to minimize the likelihood of such accidents. By placing the burden ultimately on the company whose default caused the injury, * * we think our decision today is in furtherance of these objectives.

The contours of the indemnity doctrine have been developed in a series of skirmishes between shipowners and stevedores, which will doubtless continue. But it must be remembered that the theory of burdening the stevedore has been that it is in the best position to "minimize the likelihood" of the accident. It has been suggested that when both shipowner and stevedore are at fault apportionment between them of the ship's liability to the plaintiff would be better than the current all-or-nothing rule. See G. Gilmore & C. Black, The Law of Admiralty 373–374 (1957); Stover, Longshoreman-Shipowner-Stevedore: The Circle of Liability, 61 Mich.L.Rev. 539, 564 (1963). But those considerations are not before us. We must decide instead whether this stevedore, found blameworthy by the trier of fact, should bear the expense of defending this shipowner against the plaintiff.

Appellant stevedore argues that it should not be so charged because the shipowner did not incur the liability for legal fees itself. There is no doubt that a shipowner is frequently required, as a practical matter, to obtain representation in an action a longshoreman brings against it. In theory, a shipowner can use house counsel to defend itself if it has any lawyers as employees. Cf. Bailey v. United States, 260 F.Supp. 48 (E.D.Va.1966). Another course for a shipowner is to retain counsel; had the shipowner done so here and been reimbursed by its insurer, appellant apparently concedes that it would be liable for the $1,750. See United States Lines Co. v. E. J. Lavino & Co., 198 F.Supp. 483, 489 (E.D.Pa.1961), aff'd without discussion of the point, 303 F.2d 295 (3d Cir.), cert. denied, 371 U.S. 876, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962). The shipowner here did not incur an obligation for legal fees because it had taken the precaution of buying insurance that provided it with counsel. Whether the shipowner obtained a particular type of insurance should not determine the stevedore's liability for the expense of the shipowner's defense. Cf. Wiseman v. North Central Airlines, Inc., 370 F.2d 129, 134–135 (8th Cir. 1966); Safway Rental & Sales Co. v. Albina Engine & Machine Works, Inc., 343 F.2d 129, 133–135 (10th Cir. 1965); Lesmark, Inc. v. Pryce, 118 U.S.App.D.C. 194, 334 F.2d 942, 945 (1964). As indicated, that liability is placed upon the stevedore for reasons of policy. Eliminating one aspect of liability in cases like this would not only be inconsistent with that policy but would eventually merely bring about a rearrangement of shipowners' insurance; e. g., a shipowner would hire counsel recommended by its insurer and then be reimbursed. In this context, the familiar collateral source doctrine is analogous. Just as a plaintiff in a personal injury action is not barred from recovering for doctor bills, athough his insurer, not he, pays them, see Harris v. Standard Accident & Insurance Co., 297 F.2d 627, 634 (2d Cir. 1961), cert. denied, 369 U.S. 843, 82 S.

Ct. 875, 7 L.Ed.2d 847 (1962), so the shipowner should not be barred from obtaining indemnity for the fair value of legal expense, even though it does not have to pay the legal bill because someone else—its insurer—does. Indeed, since shipowner's insurer will receive the $1,750, as appellant points out, this situation is clearly less inequitable than cases under the collateral source rule in which a plaintiff may obtain a double recovery of certain items of damage. *Cf.* 2 F. Harper & F. James, The Law of Torts, § 25.22, at 1343–1344 (1956).

To support its position, appellant relies heavily on John Wanamaker, Inc. v. Otis Elevator Co., 228 N.Y. 192, 126 N.E. 718 (1920), and Travelers Insurance Co. v. Continental Can Co., N.Y.L.J., March 15, 1965, at 16, which held that neither the insured nor his insurer can recover from a third-party indemnitor legal fees incurred in a personal injury action against the insured, which was defended by the insurer. Appellant says that these two New York cases should be controlling under Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), which involved a suit by owners of a houseboat against an insurer for the boat's loss; the Court held that the validity of certain policy provisions was governed by the law of the state where the policy was made. However, a close reading of *Wilburn* suggests precisely the opposite result here, since it teaches us that the first inquiries must be whether there is "a judicially established federal admiralty rule," and "[i]f not, should we fashion one?" 348 U.S. at 314, 75 S.Ct. at 370. The relationship between shipowner and stevedore affects all of the nation's ports and uniformity of treatment is obviously highly desirable. That relationship has long been thoroughly regulated by federally established rules, and to the extent that the narrow issue before us is still open, federal—not New York State—law should determine it. See A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227 (2d

Cir.), petition for cert. dismissed, 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49 (1958).

Appellant makes much of the fact that recovery here is really for the benefit of the insurer since the $1,750 in issue will ultimately revert to Hartford. But if the shipowner had already paid to plaintiff the $12,500 principal verdict and had then been reimbursed by Hartford, or if Hartford had paid plaintiff $12,500 directly on behalf of the shipowner, appellant's payment of $12,500 now would also be for the sole benefit of Hartford. Yet appellant concedes its liability to the shipowner for that sum. It is true that technically the shipowner has directly incurred the $12,500 obligation, and not the $1,750, but for reasons already set forth we do not regard that distinction as controlling. In short, we are not here construing a state insurance policy, as in *Wilburn*, but are deciding the proper elements of a claim for indemnity in a maritime relationship, long the subject of federal rules. So doing, we regard this claim for the value of counsel fees actually furnished as a proper item in the judgment of the shipowner against the stevedore.

Judgment affirmed.

MOORE, Circuit Judge (dissenting):

I do not dissent from the general principles of law relating to indemnification as applied in the many cases cited by the majority. Since, however, I believe that it is the function of courts to decide specific cases presented for decision on the particular facts of each case, I do not feel free to indulge in generalities.

Crosson, a stevedore, was injured on a ship owned by Nederland. Nederland was insured by Hartford Accident & Indemnity Company (Hartford). Crosson recovered a judgment of $12,500 which Hartford paid. Hartford, as the insurer, defended the action, using its own attorneys, whose salaries were paid semi-monthly by Hartford. At the completion of each trial (or other disposi-

tion), certain charges were attributed by Hartford's attorneys to each file (case). The parties stipulated that $1,-750 was a reasonable amount to be assigned to this case for attorneys' fees and costs.

Had Nederland paid this amount, there would be no question but that it would have been an item for which it would have been entitled to indemnity from ITO. But it made no such payment—directly or indirectly.

After hours of debate and hearings on two separate days, the parties agreed upon a fact stipulation which in my opinion is the only basis for a legal conclusion here. Nederland and ITO agreed that:

(1) "the disposition of the issue in this particular case before the Court now will in no way financially affect the Third-Party Plaintiff [Nederland]."

(2) "Recovery of counsel fees will not benefit the Third-Party Plaintiff [Nederland] and the failure to recover counsel fees will not work a financial detriment to the Third-Party Plaintiff in any way."

(3) "The resolution of the issue before the Court will in no way affect the experience of the ship owner for rating purposes for premium of any policy."

Therefore, whether Nederland's claim be based upon indemnity for expenses incurred or upon a quasi-subrogation theory of reimbursing Hartford (Note: "The Court: There is no right of subrogation. I don't have the Hartford before me."), the stipulated facts fail to support it. Even if some undeterminable fraction of premium cost attributable to hypothetical counsel service is assumed to have been a possible expense of Nederland, such an item, is precluded by the parties' agreement that Nederland's premium would be affected "in no way." Thus, on the facts before us, I cannot find any justification for the assessment of Nederland's non-existent attorneys' fees and costs against ITO.