580 F.2d 1222
 Murray TILLMAN, Rosalind N. Tillman, Harry C. Press,
Francella Press and Grace Rosner, Appellants,
v.
WHEATON-HAVEN RECREATION ASSOCIATION, INC., Bernard Katz,
Philip S. Trusso, Sidney M. Plitman, Anthony J. DeSimone,
Robert Friedland, Mrs. Robert Bennington, E. Richard
McIntyre, James V. Welch, Mrs. Ellen Fenstermaker and James
M. Whittles, Appellees.
Murray TILLMAN, Rosalind N. Tillman, Harry C. Press,
Francella Press and Grace Rosner, Appellees,
v.
WHEATON-HAVEN RECREATION ASSOCIATION, INC., Appellee,
and
E. Richard McIntyre, Individually, and to his own use and to
the use of Aetna Casualty and Surety Co., Appellant,
and
Bernard Katz, Philip S. Trusso, Sidney M. Plitman, Anthony
J. DeSimone, Albert Friedland, Mrs. Robert
Bennington, James V. Welch, Mrs. Ellen
Fenstermaker, and James M.
Whittles, Defendants.
 Nos. 76-1504, 76-1505.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 12, 1978.
Decided July 10, 1978.
 
 Allison W. Brown, Jr., Washington, D. C. (Edward L. Genn, Washington, D. C., Melvin L. Wulf, Am. Civil Liberties Union Foundation, New York City, Ralph J. Temple, American Civil Liberties Union Fund of the Nat. Capital Area, Washington, D. C., on brief), for appellants in No. 76-1504 and for appellees in No. 76-1505.
 H. Thomas Howell, Baltimore, Md. (John H. Mudd, Joseph A. Schwartz, III, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee in No. 76-1504 and for appellant in No. 76-1505.
 George W. Shaffer, Rockville, Md., for appellee Wheaton-Haven Recreation Ass'n, Inc., in Nos. 76-1504 and 76-1505.
 Before WINTER, RUSSELL and WIDENER, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 * This is the third time this case has been before this court. The initial action of the district court granting summary judgment for defendants was affirmed by this court in 451 F.2d 1211 (1971). The Supreme Court, however, reversed in 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973), and remanded for the district court to consider the merits of the case "free of the misconception that Wheaton-Haven is exempt from" 42 U.S.C.A. §§ 1981, 1982 and 2000a, et seq.
 
 
 2
 On remand, the district court granted plaintiffs an award of compensatory damages but entered the award only against Wheaton-Haven Recreation Association, Inc. (Wheaton-Haven), thereby exonerating all of the directors, and especially defendant E. Richard McIntyre, from the obligation to pay damages. 367 F.Supp. 860 (1973). The district court recognized the right of plaintiffs to recover attorneys' fees under 42 U.S.C. § 2000a-3(b)[1] but limited the fees to $200 for five hours that ACLU staff attorneys worked.
 
 
 3
 This court reversed and remanded to the district court in 517 F.2d 1141 (1975). By a divided court, we held that all directors who supported the original racially exclusive policy of Wheaton-Haven should be liable, jointly and severally, with the Association for damages, and we noted the possible exception of defendant E. Richard McIntyre, who claimed that he did not participate in the segregation policy. 517 F.2d at 1144-1148. We also held that plaintiffs should not be denied attorneys' fees because of the fact that the attorneys had agreed to donate most of their claimed fees to a civil rights organization.
 
 
 4
 On remand, the district court, in obedience to the mandate of this court, held personally liable all persons who were directors of the Association at the time the racially discriminatory policy was established[2] except McIntyre. The district court did, however, grant judgment in favor of McIntyre on the ground that he had opposed the racial exclusion policies of Wheaton-Haven. The court also granted attorneys' fees to plaintiffs in the amount of $21,900 based upon 730 hours of work at the rate of $30 per hour. McIntyre claimed attorneys' fees against plaintiffs upon the theory that he was entitled to them under 42 U.S.C. § 2000a-3(b) as a prevailing party. McIntyre also claimed attorneys' fees against his co-defendant, Wheaton-Haven, based upon provisions of the Association's bylaws[3] and the laws of Maryland.[4] Both of these claims of McIntyre were denied.
 
 
 5
 Plaintiffs have appealed from the judgment of the district court limiting their recovery of attorneys' fees to $21,900 and from the judgment in favor of McIntyre. McIntyre has appealed from the orders of the district court denying his application for attorneys' fees against plaintiffs and Wheaton-Haven and from the refusal of the district court to award him his costs.
 
 
 6
 It is evident that five issues are presented to this court:
 
 
 7
 (1) Was the amount of attorneys' fees awarded to plaintiffs proper?
 
 
 8
 (2) Did the district court properly grant judgment on behalf of McIntyre?
 
 
 9
 (3) Was the district court's denial of McIntyre's claim for attorneys' fees against plaintiffs proper?
 
 
 10
 (4) Did the district court correctly deny McIntyre's claim for attorneys' fees against Wheaton-Haven?
 
 
 11
 (5) Was McIntyre entitled to his costs?
 
 
 12
 It is not necessary for us to decide the first issue, that of the amount of the award of attorneys' fees to the plaintiffs, because we are of the opinion that the second issue, the judgment on behalf of McIntyre, should be affirmed for the reasons stated in the written opinion of the district court.[5] Its resolution, directed by this court, was almost wholly factual, and the findings of the district court are not clearly erroneous. FRCP 52(a). Unknown to the district court at the time it entered its judgment for attorneys' fees on behalf of the plaintiffs, the plaintiffs and all of the defendants except McIntyre had compromised the amount of attorneys' fees for $15,700, leaving plaintiffs to their suit against McIntyre. Since McIntyre is absolved of liability, the amount of the award is of no moment. The plaintiffs' appeal concerning attorneys' fees as to all defendants except McIntyre is moot.
 
 II
 
 13
 The district court denied McIntyre's claim for a prevailing defendant's attorneys' fees against the plaintiffs for the reason that it found the plaintiffs had not prosecuted their suit against McIntyre in bad faith. While it stated that its feeling was that perhaps the case was one in which it could have awarded fees against the plaintiffs, is nevertheless exercised its discretion against so doing.[6]
 
 
 14
 The rule that a plaintiff must have acted in bad faith before an award of attorneys' fees against it would lie was adopted by this court as a standard under 42 U.S.C. § 2000e-5(k) in EEOC v. Christiansburg Garment Company, Inc., 550 F.2d 949 (4th Cir. 1977), and, were that all, the reasoning of the district court would seem to be correct in this case, although under 42 U.S.C. § 2000a-3(b), for the wording of the two code sections just mentioned is practically identical and both concern the enforcement of civil rights claims by private plaintiffs.
 
 
 15
 On certiorari, however, the Supreme Court, in Christiansburg Garment Company v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), affirmed our holding but for a different reason, the Court rejecting the bad faith standard. 434 U.S. 421, 98 S.Ct. 700. The Court said that ". . . a district court may in its discretion award attorneys' fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." 434 U.S. 421, 98 S.Ct. 700. It went on to caution against an improper use of hindsight in determining whether or not to award attorneys' fees in favor of prevailing defendants, and against their award simply because plaintiffs had not finally prevailed. And it repeated its standard that an unsuccessful plaintiff should not be charged with an attorney's fee unless the court found that his claim was "frivolous, unreasonable, or groundless," but it added "or that the plaintiff continued to litigate after it clearly became so." 434 U.S. 422, 98 S.Ct. 701.
 
 
 16
 The award of attorneys' fees in such cases is in the discretion of the district court. 434 U.S. 424, 98 S.Ct. 701. Since the district court should be the first to apply the facts to the new standard, its judgment must be vacated and the case remanded for reconsideration in the light of Christiansburg Garment Company, which we hold applies to awards of attorneys' fees to prevailing defendants under 42 U.S.C. § 2000a-3(b).
 
 III
 
 17
 McIntyre's claim for attorneys' fees against Wheaton-Haven is based upon Article XVI, Section 11[7] of the bylaws of that Association and on Maryland Annotated Code, Corporations and Associations, § 2-418(d).[8]
 
 
 18
 That McIntyre did oppose the racial exclusion policy of Wheaton-Haven and did not support the corporate actions which gave rise to this proceeding, may be taken as established. It is also clear that, although Wheaton-Haven offered McIntyre representation by the counsel employed by it, he chose to be represented by other counsel. The other directors of Wheaton-Haven knew that McIntyre was being represented by other counsel.
 
 
 19
 However, no money was paid by McIntyre toward the fees of his separate attorneys. His lawyers were employed by the Aetna Casualty and Surety Company under some type of policy insuring him against legal liability. The policy is not in the record, but, on November 24, 1969, McIntyre told the other directors that he had a "professional liability insurance policy."
 
 
 20
 Not until after the entry, by the district court, of the judgment and orders appealed from did Aetna become, in any sense, a party of record in this case. As an aspect of perfecting McIntyre's appeal to this court, counsel for McIntyre and Wheaton-Haven stipulated that the caption of the case be so amended as to make E. Richard McIntyre a party "individually, and to his own use and to the use of Aetna Casualty and Surety Company."
 
 
 21
 The district court denied McIntyre's claim for attorneys' fees against Wheaton-Haven on the ground that McIntyre paid no part of the fees of the attorneys, that he could have protected himself from liability by resigning as director, and that he should have accepted the defense by Wheaton-Haven's counsel which had been tendered to him. The district court also observed that it was the plaintiffs and not Wheaton-Haven who kept McIntyre in the case, through all of its various stages.
 
 
 22
 Wheaton-Haven defends the McIntyre/Aetna claim for reimbursement for attorneys' fees upon the grounds assigned by the district court and upon the further ground that McIntyre failed to serve notice and make demand upon Wheaton-Haven that it assumes his defense.
 
 
 23
 In support of his (or Aetna's) claim for reimbursement for attorneys' fees, McIntyre asserts that Maryland Code § 2-418(d) is mandatory, that his expenditure was necessary and reasonable (referring to the argument that he could have accepted a defense by Wheaton-Haven), and that his attorneys' fee expenses were really incurred by Aetna. In the latter connection, McIntyre argues that his right to indemnification for money spent for attorneys' fees is not lost by the fact that said fees were actually paid by an insurance company and, as an alternative, that Aetna is entitled to subrogation to McIntyre's rights against Wheaton-Haven. The sum of the argument is that Wheaton-Haven owes the duty of indemnification to either McIntyre or Aetna and that neither Wheaton-Haven nor, inferentially, the court is concerned with which party gets the money. McIntyre also says that his claims are not precluded by failure to give notice to or make demand upon Wheaton-Haven, and that neither joint representation with Wheaton-Haven by its counsel, nor resignation as a director, provided him adequate protection.IV
 
 
 24
 We first consider the case as though no insurance company were involved and McIntyre had personally paid the fees of his separate counsel. If McIntyre would not be entitled to recover had he paid said fees, certainly neither he, nor Aetna, can now recover. If, however, McIntyre would be entitled to recover, we must separately consider how the result is affected by the fact that Aetna, and not McIntyre, actually made payment.
 
 
 25
 McIntyre's claim for indemnity against Wheaton-Haven for the expense of his attorneys' fees in the suit brought by plaintiffs is based upon the bylaws of Wheaton-Haven, Article XVI, § 11,[9] as follows:
 
 
 26
 "Each person who acts as a Director or Officer of the Association shall be indemnified by the Association against expenses Actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding in which he is made a party by reason of his being or having been Director or Officer, except in relation to matters as to be liable for gross negligence or willful misconduct in the performance of his duties." (Emphasis supplied)
 
 
 27
 and upon Maryland Ann.Code, § 2-418, as follows:
 
 
 28
 (d) Required indemnification against expenses incurred in successful defense. Unless a charter of a corporation expressly provides otherwise, to the extent that a corporate representative Successfully defends on the merits or otherwise any proceeding referred to in subsections (b) or (c) of this section or any claim, issue, or matter raised in the proceeding, the corporation shall indemnify him against expenses, including attorneys' fees, Actually and reasonably incurred by him in connection with the proceeding. (Emphasis supplied)
 
 
 29
 Two differences between the bylaws and the Maryland Code may be observed. First, in order to entitle McIntyre to recover under the bylaws, it must be found that his expenditure in employing separate counsel was "actually and necessarily incurred." On the other hand, the statute only requires that the expenditure be "actually and reasonably incurred." Second, the protection of the bylaws applies irrespective of the outcome of the suit against the director, whereas § 2-418(d) provides no relief to the director unless said suit was successfully defended.
 
 
 30
 We believe that the bylaw sets a more severe standard than does the Code; anything necessary would be reasonable, but an expenditure might be reasonable even though not necessary. Thus, a successful director may recover his expenditure for attorneys' fees if reasonable, but one who is unsuccessful can only recover for necessary expenditures. Since the district court entered judgment in McIntyre's favor, and we are affirming that judgment, McIntyre need only comply with the milder requirements of § 2-418(d) in order to be eligible for indemnification.9a
 
 
 31
 No Maryland decisions on the principal issue before us have been cited by counsel, and we find none. The only decision under § 2-418 apparently is Poole v. Miller, 211 Md. 448, 128 A.2d 607 (1957). That case, construing a predecessor code section, apparently present § 2-418(c), holds that it was not improper for a company to pay counsel fees for the president of the corporation in defending a mandamus suit brought against him by stockholders, even though the defense was unsuccessful.
 
 
 32
 A decision which we find quite persuasive is Mooney v. Willys-Overland Motors, Inc., 204 F.2d 888 (3d Cir. 1953). While this decision is based upon the law of Delaware, and not that of Maryland, the bylaws and statutory provisions are, in all material respects affecting the outcome here, the same as in the case at bar.[10]
 
 
 33
 In Mooney, a minority stockholder sued the corporation, Mooney, who was president and a director, and two other directors, alleging a conspiracy to misuse, and the actual misuse, of corporate funds. Only the corporation was served with process, but Mooney considered it necessary to employ counsel to prepare a defense for him and preserve his reputation for integrity. Mooney's counsel cooperated with the counsel employed by the corporation. There was some duplication of effort but some of the work done was not duplicated. The original suit was dismissed with prejudice to the original plaintiff.
 
 
 34
 Mooney is factually distinguishable from our case in that a specific agreement to reimburse the director was also involved, but that does not affect the alternate ground of the decision. Evidently, friction developed between Mooney and the corporation, and an agreement was entered into, called the "May 20th settlement," whereby Mooney's connection with the corporation was terminated and various financial adjustments were made. By paragraph 7 of the settlement agreement, the corporation agreed to indemnify Mooney for counsel fees in connection with the suit against him and the other directors. It was recited that the agreement was made pursuant to Article XXIV of the bylaws, which was the article comparable to the bylaws in this case.
 
 
 35
 When demand was made, the corporation refused to reimburse Mooney for his attorneys' fees and suit resulted. The corporation contended that neither the bylaws nor the statute were involved for two reasons: (1) that the suit against Mooney was not based upon his official acts as president and director but for his personal wrongdoing, and (2) that no attorneys' fees were due to him because, not having been served with process, he was not legally sued. The district court declined to pass upon these two contentions, and so did not determine the corporation's liability under the bylaws and statute. It held for Mooney, however, based upon the agreement of May 20th.
 
 
 36
 On appeal, Mooney contended that the contract of May 20 had validity apart from the bylaws and statute, while the corporation contended that the contract had no force beyond the bylaws and statute which it construed as favorable to it. In affirming, the court of appeals rejected the corporation's narrow construction of the bylaws and statute. It held that the contract to indemnify was fully supported by the bylaws and statute. Had the decision gone no farther, it would have little precedential value in this case because here there is no contract comparable to paragraph 7 of the May 20th settlement.
 
 
 37
 The court, however, based its decision also on an alternate ground, as shown in the following quotations from pages 896 and 897 of the opinion:
 
 
 38
 "Alternatively, because of the importance of this case as the first to involve § 2(10) of the Delaware Corporation Law and a bylaw adopted thereunder, we hold that, assuming Willys' construction of the contract of May 20, 1949, is the proper one, Mooney is still indemnifiable within the terms of the Delaware statute and Willys' By-law XXIII . . ."
 
 
 39
 ". . . Suppose three directors are sued for wasting corporate assets in making a gift to charity. The first did not in fact attend the meeting at which the gift was authorized and was not chargeable with knowledge of it before suit. He goes to some expense to prove this at the trial. The second and third directors meanwhile prove that the gift was not ultra vires. Under Willys' view the second and third directors can recover their litigation expenses in Delaware, while the first cannot because he did not take the challenged action. Yet the plaintiff sued all three defendants as directors; he could not anticipate the defense offered by the first director. Under such circumstances we should be inclined to award all three their counsel fees. . . ."
 
 
 40
 Actually, McIntyre's position is stronger than Mooney's. It could not reasonably be contended that the suit against McIntyre was for any personal wrongdoing apart from his participation in the management of Wheaton-Haven. Unlike Mooney, McIntyre actually did participate in this litigation in all of its tedious stages.
 
 
 41
 The district court found that McIntyre's expenditure for separate counsel was not reasonable or necessary, partly because he could have been defended by Wheaton-Haven's counsel. McIntyre contends that, because he had opposed Wheaton-Haven's segregation policy, a conflict of interest existed and the same counsel could not defend both Wheaton-Haven and McIntyre.
 
 
 42
 In one sense, there was not necessarily a legal conflict between Wheaton-Haven's and McIntyre's positions. It would be entirely consistent for Wheaton-Haven's counsel to contend, first, that none of the defendants were liable because the pool was a private club, and also that McIntyre was not liable for the further reason that he had opposed the segregation policy. McIntyre's additional defense is not inconsistent with the defense all of the directors had available. Thus, it may not have been strictly necessary for that reason that McIntyre have separate counsel, and this would be more especially true if the other directors assented to the assertion by McIntyre of the additional defense, which they apparently did.
 
 
 43
 While McIntyre, in the sense we have noted just above, might not find employment of an attorney necessary in order to place his claim under the bylaws of Wheaton-Haven, we think his employment of his own attorney should be considered reasonable to place it under § 2-418(d) of the Maryland Code, and indeed a finding of necessity could follow, for another reason.
 
 
 44
 Liability for a judgment in this case we think was joint and several, for in our opinion that construction is the only one which a fair reading of our prior opinion in this case, in 517 F.2d 1141, will lead to. Not only is this the law of the case, see esp. pp. 1144-46, it is the general law. 3A Fletcher, Cyclopedia Corporations (1975), § 1135. That being true, in view of the right of contribution in Maryland, see Maryland Code Ann. Art. 50, § 17, and cases there annotated, which particularly provides for pro-rata liability, it could not have been to the financial disadvantage of the other joint tortfeasors, and just as easily could have been to their financial advantage if McIntyre had been held in the case, for the pro rata liability of each would have been less had the defense available to all failed, as it actually turned out.
 
 
 45
 We also do not believe the suggestion that McIntyre could have resigned is a sufficient defense.
 
 
 46
 Accordingly, we are of the opinion it was reasonable for McIntyre to employ his own attorney and that he is entitled to indemnification from Wheaton-Haven.[11]
 
 V
 
 47
 As a further reason for denying indemnity to McIntyre, Wheaton-Haven asserts that "McIntyre must show a Demand upon the indemnitors at some point prior to incurring the expenses so as to put them on notice of his claim, so that they could have taken steps to defend him or mitigate the costs." Wheaton-Haven cites two decisions to support its legal assertion. General Accident Fire & Life v. Smith & Oby Co., 272 F.2d 581, 77 A.L.R.2d 1134 (6th Cir. 1959), reh. den., 274 F.2d 819 (6th Cir. 1960), and Jennings v. United States, 374 F.2d 983 (4th Cir. 1967). We find nothing in the first cited case to sustain the proposition for which it is cited.
 
 
 48
 Neither does Jennings v. United States support the propositions for which Wheaton-Haven cites it. That case holds that a party secondarily liable cannot claim indemnity from a party primarily liable without again proving the fact of the basic liability unless the party primarily liable is given notice of the basic claim and invited to defend. The case does not hold that a suit for indemnity cannot be maintained without giving notice and opportunity to defend to the primary obligor. It only holds that the basic liability must again be established. The same distinction is made in Baltimore & O. Ry. Co. v. Howard County Comm'rs, 111 Md. 176, 73 A. 656, at 659 (1909). We know of no authority to support the proposition that notice to a primary obligor of the basic claim, and an invitation to defend the same, is a condition precedent to the obligation of a primary obligor to indemnify a secondary obligor, who has paid the basic claim. That such is the law is expressly repudiated in Boston and Maine Railroad v. Bethlehem Steel Co., 311 F.2d 847 (1st Cir. 1963). See also Baltimore & O. Ry. Co., 73 A. at 659. The entire issue is not relevant to the facts of this case. Wheaton-Haven was fully aware of McIntyre's intention to maintain a separate defense, and it is also clear that a defense by Wheaton-Haven was available to McIntyre. Thus, we think lack of demand is no defense.
 
 VI
 
 49
 Since Aetna has been made a party to the case by agreement to McIntyre's use and "to the use of Aetna Casualty and Surety Company," we presume that any question of whether or not Aetna is entitled to subrogation in any claim that McIntyre may have against Wheaton-Haven on account of attorneys' fees paid by Aetna on behalf of McIntyre has been agreed between them, and we will not further discuss the matter.
 
 
 50
 The question remains, however, as to whether McIntyre may recover against Wheaton-Haven for attorneys' fees which were not paid by himself but by Aetna. We are of the opinion that he may.
 
 
 51
 We are of the opinion that if called upon, the Maryland courts would decide that if one party is entitled to indemnity from another, the right to indemnity is not defeated by the fact that the loss to be indemnified for was actually paid by an insurance company. Lesmark, Inc. v. Pryce, 118 U.S.App.D.C. 194, 334 F.2d 942 (1964); North Central Airlines, Inc. v. City of Aberdeen, 370 F.2d 129 (8th Cir. 1966); Crosson v. NV Stoomvart Mif " Nederland", 409 F.2d 865 (2d Cir. 1969).
 
 
 52
 While we find no Maryland authority directly on point, the reasoning of cases decided under Maryland law, arising from tort rather than contract, and under the collateral source rule, are persuasive and consistent with our holding. Meyers v. Meagher, 277 Md. 128, 352 A.2d 827 (1976); Plank v. Summers, 203 Md. 552, 102 A.2d 262 (1954).
 
 VII
 
 53
 We are further of opinion that McIntyre as the prevailing party should have been entitled to his court costs as distinguished from his attorneys' fees. No reason was stated by the district court for their denial, and nothing is called to our attention to support the ruling. See FRCP 54(d).
 
 VIII
 
 54
 The judgment of the district court is affirmed as it grants judgment in favor of McIntyre as to liability to the plaintiffs.
 
 
 55
 The judgment of the district court denying McIntyre's claim for attorneys' fees against Wheaton-Haven is reversed, as is the judgment of the district court denying McIntyre's costs as distinguished from his attorneys' fees. On remand the district court will enter judgment in favor of McIntyre on account of both of these items.
 
 
 56
 The judgment of the district court denying McIntyre's claim for attorneys fees against the plaintiffs is vacated, and this aspect of the case is remanded for reconsideration in the light of this opinion.
 
 
 57
 So far as the cases may be considered appeals by the plaintiffs from the amount of the award of attorneys' fees against all of the defendants except McIntyre, on remand the district court should dismiss this aspect of the cases as moot, the matter having been compromised.
 
 
 58
 AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; and REMANDED.
 
 
 
 [1]
 "In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . ."
 
 
 [2]
 Plaintiffs agreed to dismiss three defendants who did not become directors until after the racially discriminatory policy was established
 
 
 [3]
 Article XVI, § 11, of the bylaws of Wheaton-Haven Recreation Association, Inc., provides:
 "11. Each person who acts as a Director or Officer of the Association shall be indemnified by the Association against expenses actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding in which he is made a party by reason of his being or having been Director or Officer, except in relation to matters as to be liable for gross negligence or willful misconduct in the performance of his duties."
 This is cited as Article VI, § 12, in both the brief of McIntyre and that of Wheaton-Haven. However, the wording of the provision as quoted in the Appendix (cited as Art. XVI, § 11) is identical with that quoted in the two briefs.
 
 
 [4]
 § 2-418(d) of the Annotated Code of Maryland provides:
 "(d) Required indemnification against expenses incurred in successful defense. Unless the charter of a corporation expressly provides otherwise, to the extent that a corporate representative successfully defends on the merits or otherwise any proceeding referred to in subsections (b) or (c) of this section or any claim, issue, or matter raised in the proceeding, the corporation shall indemnify him against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the proceeding."
 
 
 [5]
 In granting judgment in favor of director, defendant, E. Richard McIntyre, the district court took notice of the direction of this court to conduct an evidentiary hearing to assess McIntyre's defense. The pertinent part of our opinion is stated in 517 F.2d at p. 1144 as follows:
 "If a director does not personally participate in the corporation's tort, general corporation law does not subject him to liability simply by virtue of his office. Fletcher v. Havre de Grace Fireworks Co., 229 Md. 196, 177 A.2d 908, 910 (1962). This rule may be applicable to one of the directors, E. Richard McIntyre, who claims that he did not participate in the adoption and enforcement of the corporation's racial policy. On remand, therefore, the district court should conduct an evidentiary hearing to assess McIntyre's defense."
 The memorandum and order of the district court includes:
 "On December 19, 1975, this Court conducted a hearing to consider McIntyre's involvement in the membership and guest policies of the association. Considerable testimony was elicited from McIntyre and others which illustrated that, rather than promoting the policy, McIntyre fought tenaciously to eliminate it. His uncontradicted testimony showed him importuning the directors and the general membership to refute the closed membership policy. However, his actions were to no avail, with his efforts being rewarded by the eventual loss of his directorship in the association. Therefore, it would be highly unfair to subject McIntyre, who in no way supported the policy, to liability for plaintiffs' attorney fees. As the Fourth Circuit noted '(i)f a director does not personally participate in a corporation's tort, general corporation law does not subject him to liability simply by virtue of his office.' Tillman, supra, 517 F.2d at 1144, citing Fletcher v. Havre de Grace Fireworks Co., 229 Md. 196, 177 A.2d 908, 910 (1962)."
 
 
 [6]
 In denying McIntyre's motion for attorneys' fees against the plaintiffs, the district court stated from the bench in part:
 "I certainly think that, of course, the Plaintiffs could have let him (McIntyre) out at any time if they wished but however there were other legal reasons which were certainly compelling why Mr. Brown kept him in, I assume, and I think that he was entitled to do so under the circumstances.
 "I cannot attach bad faith to Mr. Brown's and the plaintiffs' attitude in that respect as a matter of judgment. . . ."
 "Nevertheless, I was not directed to do so and I found also that I could not do so (reconsider liability of the directors other than McIntyre) considering the matter as a whole but beside all of that and my feeling that perhaps the case is one in which I could accede to your demand in reference or rather your request to hold the Plaintiffs liable in connection with attorney's fees I am not going to do so. I am going to rule that I'm going to deny the petition for attorney's fees for McIntyre against the Plaintiffs in this instance and hope that this will terminate this litigation which has gone on far too long and which has been the subject of long hours in reference to this Court."
 
 
 [7]
 See Note 3, supra
 
 
 [8]
 See Note 4, supra
 
 
 [9]
 See Note 3, supra
 9a To the extent that the indemnification provisions of Maryland's corporation law differ from Wheaton-Haven's bylaw, the statute must prevail because it prescribes what is the rule "(u)nless a charter of a corporation expressly provides otherwise", see p. 1227, Ante. It is not shown to us that Wheaton-Haven's charter "provides otherwise."
 
 
 [10]
 One interesting difference, which does not alter the outcome here, is that in Mooney it was the bylaw that referred to "reasonable" expenditures, while the statute referred to "necessary" expenditures, just the opposite from our case. Also, the court seemed to construe the statute as merely authorizing the bylaw. Both these differences would seem to be of no consequence in any effect that they might have on our reasoning
 
 
 [11]
 We do not have before us a case in which it is shown the corporation promised to indemnify its director for any judgment which the director might suffer as result of his duties, or to pay any such judgment. We express no opinion on the effect that might have upon the reasonableness of the action of the director in employing his own attorney